UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:10-CV-00246-H

JESSICA SANDUSKY,                                                      PLAINTIFF

V.

DONALD W. SMITH,                                                       DEFENDANTS
        *In His Individual Capacity Only*

And

MARION COUNTY BOARD OF EDUCATION,

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jessica Sandusky brought claims for alleged violations of her constitutional rights

under 42 U.S.C. § 1983 and the Fourth Amendment of the Constitution after school board

representatives suspended her from Marion County High School ("MCHS") and assigned her to an

alternative school as punishment for being caught with alcohol on a high school trip.  She filed suit

against the Marion County Board of Education ("MCBE") and its superintendent, Donald W. Smith

(collectively "Defendants").  Additionally, Sandusky brought state tort claims for negligent and

intentional infliction of emotional distress and state statutory claims arising under the Kentucky

Education Reform Act ("KERA"), KRS Chapters 61, 156, 157, and 158.  Sandusky's parents

originally filed this action as her next of friend, but this Court substituted Jessica Sandusky for her

parents once she reached the age of majority.  Defendants, in separate motions, have now moved for

summary judgment on all of Plaintiff's claims.

For the reasons set forth below, this Court holds that Plaintiff has failed to present any issues

of material fact regarding any of her federal or state law claims such that Defendants are entitled to summary judgment on all claims.

## I.

In 2010, Jessica Sandusky, a junior at MCHS in Lebanon, Kentucky, took vocational classes at Marion County Area Technology Center ("ATC").[1]  Sandusky was also a member of the Health Occupation Students of America ("HOSA"), a student group at the ATC.  In March 2010, Sandusky and other classmates planned to attend the Spring Leadership Conference for the State HOSA Competition in Louisville, Kentucky.  Sandusky understood that ATC sponsored this trip, not MCBE.

Prior to her departure, Sandusky allowed another student, Daniel Das, to put a mouthwash bottle filled with green-dyed vodka in her suitcase.  Das and another student, Andrea Reid, had purchased the alcohol from an unknown source, mixed it with green food coloring, and poured the concoction into mouthwash bottles in order to sneak alcohol into the conference.  Sandusky never removed the mouthwash bottle from her suitcase.

On Friday, March 12, while Sandusky was out of the room, Mary Joe Clark, an employee of and chaperone for ATC, entered Sandusky's hotel room that she shared with Reid and two other MCHS students.  According to Clark, she first found a mouthwash bottle filled with alcohol in Das' room.  Moving on to investigate the other students' rooms, Clark, without permission to enter the room or search through the students' belongings, found the mouthwash bottle in Sandusky's suitcase.  After questioning the students, Clark and fellow chaperone Chastity Gribbons determined

---

[1]According to Sandusky, ATC is part of Kentucky's Education and Workforce Development Cabinet and not the MCBE; however, this is not clear from the record.

that Das, Reid and Sandusky were involved in the alcohol scheme. Clark asked Sandusky and the others to call their parents and leave the HOSA conference immediately.

MCHS provided Sandusky with a notice of suspension to commence on Monday, March 15 and end on April 9, 2010. On March 15, the students and their parents met with Taylora Schlosser, the MCHS principal, and Laura Arnold, the ATC principal, to discuss the incident. Around this time, the MCHS administration made Sandusky aware of her right to a hearing.

Under Kentucky law, the superintendent and boards of education are given broad powers to expel or suspend students provided three requirements of procedural due process are met: notice, an explanation of the evidence, and an opportunity to respond. KRS § 158.150. For this reason, the MCHS allows students to receive a disciplinary hearing when the school administration assigns them notice of suspension or expulsion pursuant to school policy. Three school policies provided the authority for the disciplinary hearing panel to punish Sandusky for her possession of alcohol: the MCBE Code of Conduct, MCHS Student Handbook, and the ATC Code of Conduct.[2] Plaintiff received a copy of each of these policies at the beginning of the school year.

Three principals from schools other than MCHS and ATC comprised the hearing panel. At the hearing, Elmer George represented Sandusky. He was given two days' notice of the hearing, and

---

[2] The MCBE Student Code of Conduct provided that "[n]o pupil shall possess, use, sell, transfer or be under the influence of any unauthorized drug (alcohol) on any school property, at any location of a school sponsored activity, or on route to or from school or a school sponsored activity." The Code rendered "possession/use of unauthorized substances of paraphernalia" a Level IV offense, subject to the possibility expulsion or enrollment in the alternative school program. The MCHS Handbook declared the school's drug policy as: "Any student on school grounds or at school-related activities found using, possessing, selling, sharing and/or under the influence of alcohol, or illegal drugs, or any controlled substance, shall be recommended to the District Alternative School or to the Marion County Board of Education for expulsion." Finally, the ATC Code of Conduct affirmed, "All rules and regulations of Marion County High School are in effect for all secondary students while in attendance at the Marion County ATC." Moreover, the ATC's own drug policy stated that "the use or possession of illicit drugs or alcohol . . . on school property or at school sponsored activities constitutes cause for disciplinary suspension from a state-operated technical school."

3

when he asked for a continuance to better prepare for the proceeding, the MCBE allegedly denied his request. During the hearing, Principal Schlosser made a statement summarizing the evidence obtained by the MCHS after a brief investigation. Schlosser asked Sandusky if she had anything to add, correct or state in her defense, and Sandusky replied that she did not. Clark and Gribbons, the two chaperones at the Spring Leadership Conference, did not testify at the hearing, but Principal Arnold read aloud two affidavits they prepared. George had no advance copies of the affidavits, and the MCBE denied his request to cross-examine Clark and Gribbons.

George presented character witnesses and read a statement prepared by Sandusky that apologized for her contribution to the alcohol scheme. She was an honor student, taking Advanced Placement courses, and never had any disciplinary issues in the past. Nevertheless, the panel ordered suspension followed by placement in Hugh C. Spalding Academy, the school district's alternative school, for the remainder of her junior year. Das and Reid received the same punishment.

George wrote an appeal to Superintendent Donald Smith, who was not present at the hearing. Although the superintendent never formally ruled on the appeal, Smith did meet with Sandusky's parents and George on March 28 to discuss the results of the hearing.

The alternative school did not provide teachers for individual classes. Instead, a few teachers monitored all students, 40 to 50 students of all grade levels from middle school through high school, sitting in a large room throughout the day. For most of her classes, Sandusky learned through a self-study program called Apex Learning, although one course was shown by video and Sandusky could use a microphone to communicate with the teacher. She continued enrollment in her ATC courses, which were recorded for her or streamed through a teleconference.

4

Sandusky returned to MCHS in the fall of her senior year and graduated with honors. Although she received scores of 1 or 2 on her AP exams, she earned an academic letter in each of her four high school years. She was accepted to all colleges to which she applied and received scholarships. Nevertheless, Sandusky filed suit in this Court to assert her state and federal constitutional rights and challenge Defendants' actions as violations of state tort law. The Defendants now move for summary judgment as to all claims.[3]

Summary judgment is appropriate if the evidence submitted shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). To properly adjudicate this standard, the Court must view the evidence in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). If the movant shows that the nonmoving party has not produced enough evidence that "a reasonable jury could return a verdict for the nonmoving party," the Court will properly enter summary judgment. *Anderson*, 477 U.S. at 248.

II.

Before addressing the individual claims of the summary judgment motion, this Court must first analyze whether the Defendants[4] are entitled to qualified immunity on the state law claims.[5]

---

[3] As a preliminary matter, Plaintiff appears to withdraw her claims for injunctive relief on grounds that these claims are moot, albeit it is unclear what injunctive relief she was seeking. Nevertheless, where a plaintiff seeks relief preventing future acts, "the plaintiff must demonstrate that he is presently exposed to 'a real and immediate threat' of future deprivation by the complained of acts.'" *Newsome v. Batavia Local Sch. Dist.*, 842 F.2d 920, 923 (6th Cir. 1988)(quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983)). Without any specific allegations as to what injunctive relief she pursues, Plaintiff does not meet this standard. Therefore, this Court agrees with Plaintiff that her claims for injunctive relief are moot.

[4] Defendants argue that Plaintiff's Complaint is so ambiguous as to what capacity Plaintiff is suing Smith, that Plaintiff fails to state a claim upon which relief can be granted such that Plaintiff's claims against Smith should be dismissed. The caption below Smith's name as a Defendant on the call of the Complaint and Response reads "in his individual capacity only", but the Complaint only states that Plaintiff is suing Smith "in his capacity." Despite this

These claims include violations of KERA and charges of negligent and intentional infliction of emotional distress, and Plaintiff prays for punitive damages. Whether qualified immunity shields a party is purely a legal question reserved for the court. *Poe v. Haydon*, 853 F.2d 418, 424 (6th Cir. 1988). "Trial courts should resolve questions of qualified immunity in the earliest possible stage of litigation because qualified immunity is immunity from suit 'rather than a mere defense to liability,' and 'it is effectively lost if a case is erroneously permitted to go to trial.'" *Derfiny v. Pontiac Osteopathic Hospital*, 106 F. App'x 929, 934 (6th Cir. 2004)(quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

Under Kentucky law, a "state agency [is] entitled to immunity from tort liability to the extent that it is performing a governmental function, [and the] local board of education is a state agency entitled to governmental immunity." *Williams v. Ky. Dep't of Educ.*, 113 S.W.3d 145, 154 (Ky. 2003) (citing *Yanero v. Davis*, 65 S.W.3d 510, 519 (Ky. 2001). A state entity only enjoys governmental immunity where the government is performing governmental rather than proprietary functions. *Nelson Cnty. Bd. of Educ. v. Forte*, 337 S.W.3d 617, 621 (Ky. 2011). "The test for

---

confusion and apparent typographical error, this Court will presume, based on the caption and the response to Smith's interrogatories stating that he is being sued in his individual capacity, that Plaintiff is suing Smith in his individual capacity only.

[5]  To obtain immunity as to the federal claims, the MCBE must fall within the scope of the Eleventh Amendment of the United States. However, other courts in this district have held that local school boards are not entitled to immunity under the Eleventh Amendment. *See Meredith v. Jefferson Cnty. Bd. of Educ.*, 3:02-CV-620-H 2007 WL 3342258, at *2-5, (W.D.Ky. Nov. 9, 2007) ("While it is true that Kentucky state courts have characterized local school boards as state agencies for purposes of state sovereign immunity, the statutory language authorizing local school boards illustrates their high degree of autonomy and independence of state control. . . . . [T]he Court concludes that the Eleventh Amendment does not bar a § 1983 action for damages against [Jefferson County Board of Education]."). This Court agrees; the MCBE is not entitled to qualified immunity on the federal claims.

As to Smith, under federal law, government officials are protected from liability in their individual capacities when acting pursuant to their official duties. *Greene v. Reeves*, 80 F.3d 1101, 1104 (6th Cir. 1996)(quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To overcome this immunity, Plaintiff must show that Smith, "acting under color of state law, caused the deprivation of a federal right." *Gean v. Hattaway*, 330 F.3d 758, 766 (6th Cir. 2003)(quoting *Ky. v. Graham*, 473 U.S. 159, 166 (1985)). The next section of this opinion discusses whether Smith caused the deprivation of Plaintiff's federal rights, so this Court reserves the determination of the issue of qualified immunity under the federal laws as to Smith, in his individual capacity, until after the analysis in the next section.

whether a government agency is performing a governmental function or a proprietary function is whether the agency is 'carrying out a function integral to state government' or whether it is 'engaged in a business of a sort theretofore engaged in by private persons or corporations for profit.'" *Schwindel v. Meade Cnty.*, 113 S.W.3d 159, 168 (Ky. 2003)(internal citations omitted)(quoting *Ky. Ctr. for the Arts Corp. v. Berns*, 801 S.W.2d 327, 332 (Ky. 1990); *Yanero*, 65 S.W.3d at 520). Plaintiff admits in her Response that ATC sponsored the school trip to the HOSA Conference and employed the two chaperones who were responsible for the search and seizure. Accordingly, the only relevant actions actually attributable to the MCBE were those dealing with Plaintiff's disciplining and punishment.

The disciplining of students is integral to maintaining an academic environment that is safe and focused on education, and education has always been a public enterprise. "[A]ctivities in direct furtherance of education will be deemed governmental rather than proprietary." *Breathitt Cnty. Bd. of Educ. v. Prater*, 292 S.W.3d 883, 887 (Ky. 2009). In carrying out the disciplinary program of MCHS, the Court concludes that the MCBE was performing a governmental function, and is entitled to immunity from tort liability. Therefore, it is entitled to summary judgment on the state law claims: for negligent infliction of emotional distress, intentional infliction of emotional distress, and inadequate education under KERA.

Next, the Court considers whether Defendant Smith is entitled to qualified immunity on the state law claims. When a governmental official is sued in his or her individual capacity under Kentucky law, qualified immunity does not necessarily apply. "An employee sued individually is cloaked with immunity under the doctrine of qualified official immunity where the act in question: (1) was 'discretionary' in nature, (2) was taken 'in good faith' and (2) was 'within the scope of

employee's authority.' Conversely, if the act in question involved the negligent performance of a ministerial act, the employee is not immune from suit." *Patton v. Pollard*, — S.W.3d ---, 2011 WL 6003893, at *10 (Ky. Ct. App. Dec. 2, 2011)(internal citations omitted)(quoting *Yanero*, 65 S.W.3d at 522). Because Defendants do not put forth persuasive arguments that Smith, sued in his individual capacity, is entitled to immunity, this Court will presume that the actions taken by Smith were ministerial, and therefore outside the scope of qualified official immunity.

III.

Plaintiff asserts claims against Defendants for violation of the United States Constitution under § 1983, including charges of an unlawful search and seizure, a lack of procedural and substantive due process, and an equal protection violation.   The Court will consider each in turn.

A.

Plaintiff first asserts that the Defendants violated the Fourth Amendment of the United States Constitution by conducting an unlawful search and seizure of Plaintiff's luggage.  As with the other allegations of federal constitutional violations, this action is brought under § 1983, which employs different rules against different defendants.  Beginning with the MCBE, a plaintiff can only sustain a § 1983 suit against a local governing body where that entity acted pursuant to an unconstitutional policy or custom.  *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978).  In her Response, Plaintiff asserts that the HOSA trip to the leadership conference was an ATC-sponsored event.  The two women who conducted the search were ATC employees.  The Plaintiff goes to great lengths to divorce the ATC from the MCBE, and the HOSA conference from any connection with the MCBE. As a result, Plaintiff assents to the fact that the ATC and its employees are responsible for the actions that took place in Plaintiff's hotel room.  Without any allegations of a specific policy or

8

custom adopted and enforced by MCBE regarding the search, the MCBE cannot be held liable under § 1983 for an unlawful search and seizure.

Any attempts by Plaintiff to hold the MCBE liable for the actions of Clark or Gribbons on a theory of vicarious liability fail as a matter of law for two reasons. First, Clark and Gribbons were ATC employees, and the MCBE is not responsible for their actions. Second, the MCBE "cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.* at 691 (holding that under § 1983, Congress did not intend to create governmental liability unless the government acted "pursuant to official municipal policy of some nature" and not "*solely* because it employs a tortfeasor."). Therefore, Defendant MCBE is entitled to summary judgment on this issue.

Likewise, even if the search and seizure was in fact unlawful, Plaintiff could not hold Smith liable. Because Plaintiff sued Smith in his individual capacity, Plaintiff must show his specific involvement in the search to hold him liable for the constitutional violations. *Compare Coffy v. Multi-Cnty. Narcotics Bureau*, 600 F.2d 570, 580 (6th Cir. 1979)(holding that the director of a government bureau was not liable for the alleged deprivation of constitutional rights "absent a showing that [the director] is somehow personally at fault by actively participating in, encouraging or directing the commission of illegal acts by his subordinates") *with Smith v. Heath*, 691 F.2d 220, 224-25 (6th Cir. 1982)(holding that the supervisory police officer could be held liable for the unlawful search conducted by subordinate police officers, because the supervisor "was directly responsible for and personally participated in the deprivation of the [plaintiff's] constitutional rights.").

Smith was not present during the search, did not order the search, and was unaware of the search at the time it commenced. According to Plaintiff, Smith was not the chaperones' supervisor;

9

the chaperones were ATC employees, and ATC is not under the purview of the MCBE. Plaintiff cannot show that Smith was personally at fault for any aspect of the search. For these reasons, Smith is entitled to summary judgment on this Fourth Amendment claim.

B.

The Court next considers Plaintiff 's claim for violation of her procedural and substantive due process rights. Beginning first with the procedural due process violation, students have a property right to education once a state has undertaken to provide an education to some of its students, as Kentucky has in its constitution. *See Goss v. Lopez*, 419 U.S. 565, 574 (1975)("[T]he State is constrained to recognize a student's legitimate entitlement to a public education as a property interest which is protected by the Due Process Clause and which may not be taken away for misconduct without adherence to the minimum procedures required by the Clause."); *Wayne v. Shadowen*, 15 F. App'x 271, 287 (6th Cir. 2001); Ky. Const. § 183. Additionally, students have a liberty interest in their reputations and good names. *Wayne*, 15 F. App'x at 287. The state may not abridge these rights and interests without adequate process. *Id.*

Once one establishes that he is entitled to fair process, the question remains what process is due. *Seal v. Morgan,* 229 F.3d 567, 574 (6th Cir. 2000). Kentucky statutes outline the minimal procedural standards for process due to a student who is either suspended or expelled.

> A pupil shall not be suspended from the common schools until after at least the following due process procedures have been provided:
> (a)   The pupil has been given oral or written notice of the charge or charges against him which constitute cause for suspension;
> (b)   The pupil has been given an explanation of the evidence of the charge or charges if the pupil denies them; and
> (c)   The pupil has been given an opportunity to present his own version of the facts relating to the charge or charges.

10

KRS 158.150(5).  These statutory minimums comply with the Supreme Court's mandate in *Goss*.
In *Goss*, the Supreme Court addressed the issue of due process for a short suspension, holding that
for a suspension of ten days or less, "rudimentary precautions" satisfy procedural due process. *Goss*,
419 U.S. at 584; *Long v. Bd. of Educ. of Jefferson Cnty., Ky.*, 121 F. Supp. 2d 621, 628 (W.D.Ky.
2000).  The Sixth Circuit expounded that these rudimentary procedures must include, prior to
removal from school if possible, school administrators disclosing to the offending students the
evidence against them, asking for an explanation of their behavior, and allowing for a brief response.
*Buchanan v. City of Bolivar, Tenn.*, 99 F.3d 1352, 1359 (6th Cir. 1996)(citing *Goss*, 419 U.S. at
581).

However, the Supreme Court did not explain how these same rules apply to longer term
suspensions.  *McGath v. Hamilton Local Sch. Dist.*, 848 F. Supp. 2d 831, 839 (S.D.Ohio 2012).
Defendants present several Sixth Circuit cases supporting their contention that *Goss'* ten-day
suspension due process guidelines control here.  Plaintiff was initially suspended from March 15
through April 9, about double the suspension periods in *Goss* and its progeny.  No doubt, some
additional process is due to a student suspended for 20 days than one suspended for 10 days.
Specifically, the Plaintiff claims that she was entitled to but denied the following procedures: 1) a
continuance so that George, Plaintiff's counsel, had more than two days to prepare for the hearing;
2) cross-examination of those witnesses against Plaintiff; and 3) a meaningful appeal.

The Sixth Circuit seems to  approach due process in long-term suspension cases within the
*Mathews v. Eldridge,* 424 U.S. 319 (1976) framework.  *Newsome v. Batavia Local Sch. Dist.*, 842
F.2d 920, 923-24 (6th Cir. 1988).  Under *Mathews v. Eldridge,* the Sixth Circuit has stated that to
determine how much process satisfies the Fourteenth Amendment, the Court must balance the

competing interests of the parties involved.  *Id.*  In the school disciplinary context, the student's interest lies in not being excluded from their education unfairly, and the school's interest is in maintaining a safe school environment and devoting all energies and resources to fulfill academic goals.  *Seal*, 229 F.3d at 574 (quoting *Goss*, 419 U.S. at 577).

Concerning the denial of a continuance, Plaintiff recalls the oft-quoted requirement that a due process hearing be "granted at a meaningful time and in a meaningful manner." *Fuentes v. Shevin*, 407 U.S. 67, 80-81 (1972).  The meaningful time standard is meant to require quick resolution of disputes with the government, because delays may prompt increased deprivation and enhance the negative effects of adverse government action on the reputation of the offended party. *See Loudermill v. Cleveland Bd. of Educ.*, 721 F.2d 550, 563-64 (6th Cir. 1983).  Plaintiffs try to reconfigure this principle to support an alternate conclusion: that Due Process requires a delay in proceedings.  The Court does not believe that the Supreme Court intended *Fuentes* in this way.

Applying the *Mathews v. Eldridge* balancing scheme, the MCBE's decision to deny George's request for a continuance did not amount to a violation of Plaintiff's due process rights.  While additional time may have provided George more opportunity to investigate the charges, Plaintiff did not contest any of the factual allegations presented at the hearing.  Additionally, George was able to offer character witnesses in Plaintiff's favor at the hearing.  Likely, granting a continuance would not have altered the outcome of the hearing, such that a continuance would not have reduced the risk of governmental error.  At the same time, the MCBE and its administrators do have an interest in efficient and swift resolution of disciplinary issues.  Thus, Plaintiff's request for a continuance did not touch upon an important interest.  Therefore, the denial of a continuance did not affect Plaintiff's due process rights.

12

Turning to the issue of cross-examination, it is true that the right to cross-examine witnesses is important to any truth-gathering expedition. *Newsome*, 842 F.2d at 924. Nevertheless, the Sixth Circuit has determined that this right is not necessary to satisfy due process even in long-term school suspension scenarios, because the burden on the government outweighs the benefit to the student. *Id.* at 925.

> School boards and administrations are not quasi-judicial . . . To saddle them with the burden of overseeing the process of cross-examination (and the innumerable objections that are raised to the form and content of cross-examination) is to require of them that which they are ill-equipped to perform. The detriment that will accrue to the educational process in general by diverting school board members' and school administrators' attention from their primary responsibilities in overseeing the educational process to learning and applying the common law rules of evidence simply outweighs the marginal benefit that will accrue to the fact-finding process by allowing cross-examination.

*Id.* at 926. While cross-examination may have proven beneficial to Plaintiff, the panel's decision to bar it did not violate Plaintiff's due process rights.

For similar reasons, Plaintiff's claim that she was denied a meaningful appeal, even if true, did not amount to a violation of her due process rights. In *Flaim v. Medical Coll. of Ohio*, the Sixth Circuit determined that if a university student received a fair hearing, he or she is not entitled to an appeal of that decision. 418 F.3d 629, 642 (6th Cir. 2005)(stating that "Courts have consistently held that there is no right to an appeal from an academic disciplinary hearing that satisfies due process"). The Sixth Circuit came to the same conclusion regarding a high school student who was suspended for ten days after receiving a fair disciplinary hearing. *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 569 (6th Cir. 2011). While the instant cases involves a high school student punished with a long-term suspension, the analysis in these cases is persuasive.

13

Plaintiff does not present and the Court cannot find any case law that recognizes a constitutional right to an appeal of school board disciplinary decisions. Certainly, the Sixth Circuit has not set forth such a rule. The likely reason is that the school board's interests in administrative efficiency and economy become more pronounced when compared to Plaintiff's interests in more process. Indeed, "[a]llowing students to state claims for procedural due process violations against officials participating in the type of process the Constitution does not require would further formalize the suspension process and increase its adversarial nature, two undesirable outcomes." *Id.* at 570.

For all these reasons, the decisions of Smith and the MCBE to deny a continuance and to bar cross-examination are not so unfair as to outweigh Defendants' interests and, thus, violate Plaintiff's procedural due process rights.[6]

C.

Plaintiff also asserts a substantive due process claim - that the MCBE's decision was extreme considering Sandusky's minor involvement in the scheme. To maintain a substantive due process claim, a plaintiff must show the violation of a fundamental right. *Boroff v. Van Wert City Bd. of Educ.*, 220 F.3d 465, 471 (6th Cir. 2000). Upon a finding that the government violated a fundamental right, the Court will subject the government's action to strict scrutiny, being mindful of the fact that "the prerogative of managing the public schools belongs to the states and the boards of education and administrators to whom the state has delegated it. The federal courts have the

---

[6]As stated above, school boards are not judicial entities, so requiring school boards to adopt additional judicial-like procedures would complicate the disciplinary process and divert scarce public school funding. Even though Plaintiff had no right to appeal, Superintendent Smith received Plaintiff's appeal letter and met with the Plaintiff and her parents regarding the panel's decision. While no formal decision followed, this does amount to an appeals process of sorts.

power to supersede their decisions only where their actions are clearly unconstitutional." *Katchak v. Glasgow Indep. Sch. Sys.*, 690 F. Supp. 580, 583 (W.D.Ky. 1988) (quoting *Petrey v. Flaugher*, 505 F.Supp. 1087, 1090 (E.D.Ky. 1981)).  Without a fundamental right, the Court will uphold the government's decision where it was rationally related to a legitimate state interest.  *Id.*

Certainly, a reasonable person might say that the punishment here seems rather severe.  However,  that does not mean that a fundamental right has been abused. The Supreme Court has recognized that "public education in our nation is committed to the control of state and local authorities."  *Goss*, 419 U.S. at 578 (quoting *Epperson v. Ark.*, 393 U.S. 97, 104 (1968)).  This leaves the Court with the authority to adjudge the Defendants' actions according to a rational basis scrutiny.  In the school discipline context, "a substantive due process claim will succeed only in the 'rare case' when there is 'no rational relationship between the punishment and the offense.'" *Seal*, 229 F.3d at 575 (quoting *Rosa R. v. Connelly*, 889 F.2d 435, 439 (2d Cir. 1989)).

Suspending a student for possession of alcohol at a school-related event is within the realm of reasonable punishment.  The MCBE Code of Conduct and MCHS Handbook prohibit this activity and delineate punishments which include expulsion and assignment to the alternative school with re-admittance to the high school the following year.   Kentucky statutes characterize "the use or possession of alcohol" as "cause for suspension or expulsion from school." KRS § 158.150(1)(a).  Defendants followed the guidelines set forth in the Codes of Conduct and Kentucky statutes.  While the Court respects Plaintiff's argument about the severity of the punishment, Plaintiff's punishment was so not severe as to be unreasonable.  Satisfying the rational basis test, Defendants did not violate Plaintiff's substantive due process rights.

D.

15

Plaintiff brings her final federal claim under the Equal Protection Clause of the Fourteenth Amendment, which requires that governmental entities treat similarly situated persons alike. *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992).  Where the Plaintiff is a member of a suspect class, courts apply a heightened level of scrutiny to the government's actions.[7]  *Dillinger*, 762 F.2d at 508. Only those classes that have been identified by the Supreme Court as suspect receive this heightened scrutiny.  *Id.* Here, Plaintiff does not assert that she is a member of a suspect class.  Therefore, the Court will only hold the government liable for Equal Protection Clause violation where its actions were not rationally related to a legitimate government purpose.  *San Antonio Indep. Sch. Dist.*, 411 U.S. at 40.

"In opposition to a motion for summary judgment, it is [the] plaintiff who possesses the burden of demonstrating that the defendants treated similarly situated individuals in a disparate manner." *S.S. v. E. Ky. Univ.*, 532 F.3d 445, 457-58 (6th Cir. 2008)(quoting *Buchanan*, 99 F.3d at 1360).  Here, Plaintiff has presented no evidence that other students caught violating the MCHS drug and alcohol policy were treated differently than her.  Her attorney at the hearing made allegations to that effect, but nothing has been substantiated. The other two HOSA members involved in this incident were suspended and enrolled in the alternative school.  Thus, the MCBE treated all three teenagers, regardless of their level of involvement, exactly the same.  Without any proof to the

---

[7] The Court will also apply a heightened level of scrutiny under the Equal Protection Clause where the government burdens a fundamental right. *Dillinger v. Schweiker*, 762 F.2d 506, 508 (6th Cir. 1985). There is no fundamental right to education, despite its undisputed importance, and Plaintiffs have not alleged an infringement of any other purported fundamental right. *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 37-38 (1973).  Again under this analysis, Plaintiff is not entitled to strict scrutiny over this Equal Protection Claim.

contrary, the Plaintiff has failed to assert a valid Equal Protection claim in this case, and the Defendants are entitled to summary judgment on the issue.

Plaintiff has failed to show that Defendant Smith violated her federal rights, a precondition to overriding official immunity for officials sued in their individual capacity. *See supra* note 5. Therefore, Smith is entitled to official immunity as to the federal claims.

### IV.

The Court turns now to the state law claims. Plaintiff asserts that Defendants deprived her of an adequate education under KERA and the Kentucky Constitution, and that their actions were tantamount to either negligent or intentional emotional distress. This Court has granted the MCBE qualified immunity as to these claims, and the remaining state law claims asserted against Smith individually fail as a matter of law.

### A.

First, Plaintiff claims that Defendants failed to provide her an adequate education under both KERA and the Kentucky Constitution. KERA applies to public schools and establishes "a broad set of educational objectives for students in the public schools," but "[t]he provisions of the Act do not suggest that the General Assembly intended to create a new avenue for civil litigation against schools and teachers." *McGurl v. Friends Sch., Inc.*, 2002-CA-000115-MR, 2003 WL 1343248, at *4 (Ky. Ct. App. Feb. 14, 2003) ("The Act does not provide for citizen lawsuits."). Because no private right of action to sue for inadequate education exists under KERA, this claim fails.

Under § 183 of the Kentucky Constitution, the General Assembly is charged to provide an efficient system of common schools. *Rose v. Council for Better Educ., Inc.*, 790 S.W.2d 186, 194 (Ky. 1989). This means that students have a right to an adequate education. *Id.* at 211-12. The right

17

to an adequate education, however, does not grant Plaintiff "entitle[ment] to the best possible education attainable, nor to instruction administered under ideal conditions, nor to academic opportunities which conformed to any self-acclaimed expert's subjective ideal vision of a perfect education." *Wayne v. Shadowen*, 15 F. App'x 271, 285 (6th Cir. 2001)(italics omitted).

Plaintiff does not, nor is she able to, point to specific acts attributable to Smith that led to Plaintiff's inadequate education.  Moreover, the relief sought under an inadequate education claim is injunctive, and Plaintiff has admitted that her claims for injunctive relief are now moot. Defendant Smith is entitled to summary judgment on the claim for violation of the Kentucky Constitution.

B.

Plaintiff asserts two related claims for emotional distress.  First, she claims intentional infliction of emotional distress claim ("IIED").  The four elements of an IIED claim under Kentucky law are the following:

(1) the wrongdoer's conduct must be intentional or reckless;
(2) the conduct must be outrageous and intolerable in that it offends against generally accepted standards of decency and morality;
(3) there must be a causal connection between the wrongdoer's conduct and the emotional distress; and
(4) the emotional distress must be severe.

*Humana of Ky., Inc. v. Seitz*, 796 S.W.2d 1, 2-3 (Ky. 1990)(citing *Craft v. Rice*, 671 S.W.2d 247, 249 (Ky. 1984)).  The defendant's actions must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Humana of Ky.*, 796 S.W.2d at 3 (italics omitted) (quoting Restatement (Second) of Torts § 46 cmt. d).

18

The threshold for conduct sufficiently devious to constitute IIED is high and a question of law for the court to decide. *Stringer v. Wal-Mart Stores, Inc.*, 151 S.W.3d 781, 787, 791 (Ky. 2004). This Court holds that the Defendants' conduct fails to meet this standard. Defendants followed the procedural guidelines for student suspensions as laid out in the MCBE Code of Conduct, the MCHS Handbook and the Kentucky statutes. Defendants provided Plaintiff notice of the charges before her, an opportunity for legal representation and to present her side of the story, and the chance to return to MCHS to complete her secondary education. Plaintiff does not allege any behavior on behalf of the Defendants that is outrageous or extreme.

The final emotional distress claim is more easily resolved. Under Kentucky law, a claim will not lie for negligent infliction of emotional distress absent physical contact or injury. *Steel Techs., Inc. v. Congleton*, 234 S.W.3d 920, 928-29 (Ky. 2007). Plaintiff has not alleged any physical contact or injury, so the Defendants' motion for summary judgment on this issue must be granted.

V.

Finally turning to damages, Plaintiff asserts that she is entitled to punitive damages. Under federal law, municipalities are immune from punitive damages sought in § 1983 actions. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981); *Ctr. for Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 818-19 (6th Cir. 2007). The Supreme Court reasoned that punitive damages are intended to punish the tortfeasor, and an award of punitive damages against a municipality punishes the taxpayers. *City of Newport*, 453 U.S. at 266-67 ("[P]unitive damages imposed on a municipality . . . are likely accompanied by an increase in taxes or a reduction of public services for the citizens footing the bill. Neither reason nor justice suggests that such retribution should be visited upon the shoulders of blameless or unknowing taxpayers.") This same

19

rationale applies to a school board, and for that reason, a school board is immune from punitive damages liability under federal law.  *See Moss v. Shelby Cnty.*, 401 F.Supp. 2d 850, 856-57 (W.D.Tenn. 2005).

This Court need not discuss whether a school board is immune from punitive damages under state law, because the state law claims have been dismissed as to the MCBE.  No punitive damages can be awarded to Plaintiffs against the MCBE.

As to Defendant Smith, federal law provides that a plaintiff may recover punitive damages from a government official sued in his individual capacity where that official "wilfully and intentionally violates another's civil rights or when the defendant acts with reckless or callous indifference to the federally protected rights of others." *Gordon v. Norman*, 788 F.2d 1194, 1199 (6th Cir. 1986).  Under Kentucky law, a plaintiff may be awarded punitive damages even without a showing of compensatory damages where a tort is committed intentionally and without justification.  *Commonwealth Dep't of Agric. v. Vinson*, 30 S.W.3d 162, 166 (Ky. 2000).

Superintendent Smith was not indifferent to the rights of Plaintiff, but rather, attempted to ensure those rights were protected by overseeing a disciplinary program that followed statutory standards for due process.  Indeed, the amount of process granted to Plaintiff was greater than mandated by Kentucky law, including representation by counsel and receiving evidence despite the fact that she did not contest the facts alleged against her.  For these reasons, claims for punitive damages against Defendant Smith also fail as a matter of law.

For the reasons stated herein, and being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendants' motions for summary judgment are SUSTAINED and Plaintiff's claims are DISMISSED WITH PREJUDICE.

This is a final order.

cc:    Counsel of Record